**RECORD NO. 15-3056**

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

*In The*

# United States Court of Appeals
### For The District of Columbia Circuit

# UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

# DAWAYNE BROWN,
## also known as Goon,

*Defendant – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————

## BRIEF OF APPELLANT

———————

**Christine Pembroke**
**LAW OFFICE OF CHRISTINE PEMBROKE**
**3312 Dent Place, NW**
**Washington, DC 20007**
**(202) 553-3118**

*Counsel for Appellant*

## CIRCUIT RULE 28 CERTIFICATE
## AS TO PARTIES, RULINGS AND RELATED CASES

(A)     <u>Parties and Amici</u>:  This appeal arises from a criminal proceeding involving defendant Dawayne Brown and the United States of America.  Co- defendants Breal Hicks, Ira Adona, Marquette Boston, Condovia Eddie and Keith Matthews also appeared below.  This Court consolidated Dawayne Brown's appeal with the appeals of Ira Adona, Marquette Boston, and Keith Matthews.  Mr. Brown's appeal was subsequently deconsolidated.  There are no intervenors or amici.

(B)     <u>Rulings Under Review</u>: This is an appeal from the judgment of the district court (Honorable Richard J. Leon), entered September 1, 2015.  In particular, Appellant Brown submits that the trial judge failed to properly instruct the jury on each of the three charges for which he was convicted and that the trial judge erred in imposing a 96 month sentence on one of the charges.

(C)     <u>Related Cases</u>:  Appellant was previously a party to the government's interlocutory appeal in this case that was filed on July 31, 2014 and dismissed by this Court on August 7, 2014. *United States v. Hicks*, 14-3052, 2014 WL 4627805, at *1 (D.C. Cir. Aug. 7, 2014).  The consolidated appeals of Ira Adona, Keith Matthews and Marquette Boston are pending before this Court.  *United States v. Ira Adona*, No. 15-3067; *United States v. Keith Matthews*, No. 15-3066; *United States v. Marquette Boston*, No. 15-3065.

/s/ Christine Pembroke
Christine Pembroke

i

# TABLE OF CONTENTS

**Page**

CIRCUIT RULE 28 CERTIFICATE
AS TO PARTIES, RULINGS AND RELATED CASES ........................................i

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES ..............................................................iv

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES ........................................................1

CONSTITUTIONAL PROVISIONS, STATUTES AND RULES .........................2

STATEMENT OF THE CASE ..........................................................2

STATEMENT OF RELEVANT FACTS ................................................5

    The Trial Evidence ..............................................................5

        The Clifton Trap House ................................................5

        The Martin Trap House ................................................9

        The Williams Trap House ..............................................9

        The Eddie Trap House ................................................11

        The Mathis Trap House ...............................................11

    Closing and Jury Instructions ................................................12

    The Verdict And Sentencing ..................................................14

SUMMARY OF ARGUMENT ..........................................................16

ARGUMENT .................................................................................................17

    I.    The Trial Judge Erred In Instructing The Jury That Mr. Brown
        Could Be Found Guilty Of Second Degree Burglary Based His
        Entering Clifton's Apartment With An Intent That Was Not
        Criminal ...............................................................................................17

        A.    Standard of Review ...................................................................17

        B.    The Conviction Of Burglary While Armed Cannot Stand .......18

    II.    The Trial Judge Erred By Instructing The Jury That Appellant
        Had A Prior Misdemeanor Unregistered Firearm Conviction ...........20

        A.    Standard of Review ...................................................................20

        B.    The Unregistered Firearm Conviction Cannot Stand ..............20

    III.    The Trial Judge Erred By Failing To Give A Special Unanimity
        Instruction On The PWID Charge ......................................................24

        A.    Standard of Review ...................................................................24

        B.    The PWID Conviction Cannot Stand........................................24

    IV.    The Sentence Based On Possession Of 100 Grams Or More Of
        PCP Was Unreasonable And Clearly Erroneous ...............................27

        A.    Standard of Review ...................................................................27

        B.    Appellant's PWID Sentence Must Be Reduced Based On
            Procedural And Substantive Error .............................................28

CONCLUSION ............................................................................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ADDENDUM

iii

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alleyne v. United States*,
   133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013)....................................................22

*Apprendi v. New Jersey*,
   530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) .....................21, 22

*Chapman v. California*,
   386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) ...................................18

*Eady v. United States*,
   44 A.3d 257 (D.C. 2012) ..............................................................................20

*EEOC v. Atlantic Community Sch. Dist.*,
   879 F.2d 434 (8th Cir. 1989) ........................................................................17

*Gall v. United States*,
   552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) ...............................27

*Hasbrouck v. Texaco, Inc.*,
   842 F.2d 1034 (9th Cir. 1987), *aff'd*,
   496 U.S. 543 (1990)......................................................................................17

*Hawkins v. United States*,
   434 A.2d 446 (D.C. 1981) ............................................................................26

*Joy v. Bell Helicopter Textron, Inc.*,
   999 F.2d 549 (D.C. Cir. 1993).......................................................................17

*Kotteakos v. United States*,
   328 U.S. 750, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946) ..................................18

*Rorie v. United States*,
   882 A.2d 763 (D.C. 2005) .............................................................................18

*Thomas v. United States*,
    650 A.2d 183 (D.C. 1994) ...........................................................20

*United States v. Almendarez-Torres*,
    523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998) ...........21

*United States v. Booker*,
    543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) .............27

*United States v. Day*,
    524 F.3d 1361 (D.C. Cir. 2008) ..................................................27

*United States v. Gardellini*,
    545 F.3d 1089 (D.C. Cir. 2008) ..................................................27

*United States v. Hack*,
    445 A.2d 634 (D.C. App. 1982) ..................................................24

*United States v. Hubbard*,
    889 F.2d 277 (D.C. Cir. 1989)......................................................24

*United States v. Jones*,
    67 F.3d 320 (D.C. Cir. 1995) ......................................................22

*United States v. Larry*,
    632 F.3d 933 (5th Cir. 2011) ......................................................28

*United States v. Mangieri*,
    694 F.2d 1270 (D.C. Cir. 1982)....................................................24

*United States v. Old Chief*,
    519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) .............22

*United States v. Seegers*,
    445 F.2d 232 (D.C. Cir. 1977).....................................................18

*United States v. Thomas*,
    444 F.2d 919 (D.C. Cir. 1971).....................................................18

*United States v. Webb*,
    255 F.3d 890 (D.C. Cir. 2001).....................................................20

**CONSTITUTIONAL PROVISION**

U.S. CONST. amend. VI ................................................................24

**STATUTES**

18 U.S.C. § 3231 .........................................................................1

18 U.S.C. § 3553(a) ...................................................................27

21 U.S.C. § 841(a)(1) ......................................................... 3-4, 31

21 U.S.C. § 841(b)(1)(C) .........................................................4, 31

28 U.S.C. § 1291 ..........................................................................1

D.C. Code § 7-2502.01 .........................................................20, 21

D.C. Code § 7-2502.01(a) ......................................................4, 31

D.C. Code § 7-2507.02(2)(A) ................................................4, 31

D.C. Code § 7-2507.06 ..............................................................21

D.C. Code § 7-2507.06(a)(2)(A) ................................................21

D.C. Code § 11-502(3) .................................................................1

D.C. Code § 22-801(b)............................................................3, 31

D.C. Code § 22-4502 .............................................................3, 31

**RULES**

D.C. Cir. R. 28(a)(5) ...................................................................2

Fed. R. App. P. 28(f) ...................................................................2

vi

**OTHER AUTHORITIES**

CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA,
    Jury Instruction 5.101 .......................................................................18

CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA,
    Jury Instruction 6.200 ..............................................................19, 20

CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA,
    Jury Instruction 6.504 .................................................................21

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

## 15-3056
_____

## UNITED STATES OF AMERICA
*Appellee*,

**v.**

## DAWAYNE BROWN
*Appellant*.

_____

## APPELLANT'S OPENING BRIEF
_____

## JURISDICTIONAL STATEMENT

On September 10, 2013, Dawayne Brown was named along with five others in a superseding indictment charging federal and local offenses.  JA ___.  The district court had jurisdiction pursuant to 18 U.S.C. § 3231 and D.C. Code § 11-502(3).  Final judgment was imposed on September 10, 2015.  JA___.  A timely notice of appeal was filed on September 15, 2015.  JA___.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. The trial court erred in failing to instruct the jury correctly on a predicate offense to the charge of burglary.

1

2. The trial judge erred in instructing the jury on an unregistered firearm offense that Appellant had a prior conviction for possession of an unregistered firearm.

3. The trial judge erred in failing to give a special unanimity jury on a possession with the intent to distribute a controlled substance offense.

4. The trial judge imposed an unreasonable and clearly erroneous sentence when he increased Appellant's sentence based on his conclusion that Appellant possessed 100 grams of more of phencyclidine.

## CONSTITUTIONAL PROVISIONS, STATUTES AND RULES

In accordance with Federal Rule of Appellate Procedure 28(f) and D.C. Circuit Rule 28(a)(5), pertinent statutes and rules are set forth in the Addendum to this brief.

## STATEMENT OF THE CASE

This case was the product of a government investigation of several individuals who allegedly conspired to distribute phencyclidine or PCP in and around the Woodberry apartment complex in the 3200 block of 23rd Street, Southeast D.C. Several of the suspected co-conspirators were separately prosecuted. Others were never indicted and cooperated with the government. Three individuals, Appellant Brown (also known as "Goon"), Marquette Boston and Keith Matthews, were the targets of a nearly forty count indictment related to

2

their alleged participation in the PCP distribution conspiracy and the government's theory that they maintained, sometimes through threats and violence, "trap houses" in a few Woodberry apartments.[1]  Specifically, Mr. Brown was charged with threats, armed kidnapping, armed robbery, armed extortion, second degree armed burglary, two counts of second degree cruelty to children, conspiracy to distribute PCP, possession with the intent to distribute (PWID) PCP, carrying a firearm during a drug trafficking offense, unregistered firearm possession (second offense), and obstructing justice.[2]

Mr. Brown entered pleas of "not guilty." As subsequent plea agreements were rejected by the presiding judge, the Honorable Richard Leon, Mr. Brown and his two co-defendants were tried before a jury.

The trial lasted several weeks and all but a few days of the proceedings were devoted to the government's case.  In general, the key civilian government witnesses against the defendants were admittedly or arguably themselves drug-dealers or cooperators with drug-dealers.  At the end, the jury found Mr. Brown guilty of only three charges: second degree burglary while armed (*see* D.C. Code §§ 801(b) and 4502), unlawful possession with intent to distribute PCP (*see* 21

---

[1] Trap houses are premises used for storing contraband such as drug distribution supplies.

[2] As only three charges of the eleven charges resulted in convictions, we leave off the code provision citations and later identify them only with respect to the counts that at issue in this appeal.

3

U.S.C. §§ 841(a)(1) and 841(b)(1)(C)), and possession of an unregistered firearm (second offense) (*see* D.C. Code §§ 7-2502.01(a) and 2507.02(2)(A)). The jury deadlocked on the charge of carrying a firearm during a drug trafficking offense which resulted in a mistrial on that count.  *See* Transcript (Tr.) for 3/24/2015 at 18; JA ____ and 3/17/2015 at 33; JA___.

At a post-trial hearing, Mr. Brown was sentenced to 96 months of incarceration on the PWID charge based, in part, on Judge Leon's finding that he intended to distribute between 100 and 400 grams of PCP.  Judge Leon sentenced Mr. Brown a 60 month mandatory minimum term on the burglary conviction and 12 months on the unregistered firearm offense.  All sentences were imposed consecutively for a total of 168 months.

Mr. Brown timely appealed.  Attorney David B. Smith was initially appointed to represent him.  On January 27, 2017, undersigned counsel was appointed to replace Attorney Smith and this Court set March 27, 2017, as the deadline for Mr. Brown's opening brief.

## STATEMENT OF RELEVANT FACTS

### The Trial Evidence

#### *The Clifton Trap House*

Louis Clifton, a resident of Woodberry apartment No. 24, testified on behalf of the government.  Tr. at 2/18/15 am at 41 and 46; JA ___.[3]  The jury was informed that the government had promised not to prosecute Clifton if he cooperated.  *Id.* at 144-45; JA ___.

Clifton admitted that, for a two year period prior to the alleged take-over of his apartment, he regularly purchased drugs, including on several occasions PCP, from Mr. Brown and that the transactions sometimes took place in Clifton's apartment.  *Id*. at 60-2, 71 and 78-79; JA ____.[4]  Clifton testified that he had seen Mr. Brown and co-defendant Matthews selling marijuana and PCP in front of his building.  *Id*. at 74; JA ___.

According to Clifton, Mr. Brown had repeatedly mentioned to Clifton that he wanted to use Clifton's apartment.  *Id*. at 107-08; JA ___.  Eventually, Mr. Brown and his co-defendants confronted Clifton and demanded that he provide

---

[3] Clifton's testimony was important to the government's case because it was the sole basis of the charges against Mr. Brown of threats, armed kidnapping, armed robbery, and armed extortion (all of which were based on the alleged taking or obtaining of the apartment key), and second degree armed burglary.  Clifton's testimony was also intended to support the government's case with respect to other charges against Mr. Brown.

[4] Clifton also admitted to past cocaine abuse.  *Id*. at 82-83; JA ___.

5

them with a key to his apartment.  When Clifton refused, they "tussled" and

Clifton managed to escape.  *Id*. at 94-97; JA ___.  About a week after this incident,

Mr. Brown, while threatening Clifton with a revolver and otherwise, essentially

forced Clifton to accompany him to a nearby convenience store to have the key

produced.  *Id*. at 109-114; JA ___.  Mr. Brown, with Clifton, then went to Clifton's

apartment, and tested the key.  Once inside, Mr. Brown, Clifton claimed, pulled

two revolvers out of his pockets and placed them on a table.  *Id*. at 114; JA ____.

Clifton testified that Mr. Brown used Clifton's apartment to store and sell PCP.  *Id*.

at 151-55; JA ___.  The record indicates that Mr. Brown occupied Clifton's

apartment for this purpose for few days.[5]

Clifton claimed that he did not want the defendants using his apartment, that

he was frightened of the defendants, and that he stayed with his family while the

defendants were in his apartment.  *Id*. at 161 and 166-67; JA ___.  He called 911

twice seeking assistance but got no help.  Tr. 2/19/15 am at 6-8; JA___.  Clifton

also sought help from his sister, who worked for the company that managed the

Woodberry complex, but he failed to follow-through on his sister's arrangements

for police assistance.  Eventually, on the advice of a cousin, Clifton went in person

---

[5] Although Clifton's testimony suggested that Mr. Brown engaged in this activity
for weeks, the jury instructions specified that on or about January 7, 2013, Mr.
Brown burglarized Clifton's apartment and, on January 12, 2013, Mr. Brown was
arrested and held.

to the police station to complain, and that contact resulted in, on January 12, 2013, a search of Clifton's apartment. *Id*. at 16; JA ___.

On cross-examination, Clifton was impeached with his history of substance abuse including long-time PCP use. Tr. 2/19/15 am at 67-68 and 120; JA ___. The defense was also able to suggest that Clifton was himself a drug dealer by eliciting testimony that Clifton had provided PCP in exchange for money and sex and with the fact that Clifton possessed ten pairs of shoes costing $150 a pair and that the possession of such expensive clothing was not consistent with the legitimate financial means available to him. *Id*. at 133 and 100-101; JA ___ (noting that Clifton was paid $9.00 an hour).[6]

The cross-examination also suggested that Clifton's claims of coercion by the defendants were not credible and that he was, in fact, collaborating with the defendants.[7] The defense further elicited testimony that suggested that Clifton was

---

[6] Clifton was not able to convincingly explain the shoes and maintained only that they were gifts without articulating why anyone would give him such valuable items.

[7] For example, although Clifton maintained that he tussled with the defendants, he could not explain why no one in the crowd which gathered came to his aid or why he could not identify any of the on-lookers to corroborate his story notwithstanding the fact that he had lived in the building several years. Tr. 2/19/15 am at 140; JA ___. The defense also cast doubt on Clifton's allegation that he was forced to have a key made by questioning Clifton's inability to walk away from Mr. Brown and failure to go to the police immediately given that he should have known there were store security cameras that would have captured the incident. *Id.* at 74-76; JA ___.

7

keeping a gun in the apartment prior to the alleged apartment take-over.[8]  The

defense produced a photograph of Clifton posing with defendant Matthews and

Clifton admitted he was friendly with the defendants.  *Id*. at 183-84; JA ___.  The

defense cast doubts on Clifton's intent to remove the defendants from his

apartment with testimony tending to show that Clifton himself intentionally failed

to follow through on getting police assistance.[9]

-------------------

[8] During direct examination, Clifton, while describing events preceding the alleged apartment take-over, stated that his window had been broken as a result of being shot and, when it was fixed, the maintenance crew found a slug inside his apartment.  Tr. 2/18/15 am at 109 and 115; JA ___.  The defense questioning on that subject suggested that the bullet was fired from inside the apartment. Tr. 2/19/15 am at 145-46; JA ___.  Later, testimony from Clifton's sister bolstered that defense suggestion.

[9] Clifton's sister made arrangements for the police to be available to enter Clifton's apartment at a set time when Clifton was supposed to make a phone call to signal that the police should proceed.  At the designated time, Clifton claimed that his apartment key somewhat inexplicably did not work and the police, according to Clifton, readily agreed to abandon their efforts to search the apartment notwithstanding the fact that they had been told it housed guns and PCP.  Tr. 2/19/15 am at 94-96 and 161-66; JA ___.  To bolster Clifton's testimony, the government called his sister and cousin to testify about whether Clifton seemed fearful of the defendants, his efforts to get police assistance, and his character.  The government's efforts to salvage Clifton's testimony backfired to some extent.  On cross-examination, Clifton's sister and cousin expressed shock when they learned that Clifton had hidden years of substance abuse from them.  Tr. 2/23/15 am at 77; JA ___.  In addition, Clifton's sister testified that she repeatedly tried to reach her brother when he did not call at the designated time she had arranged for police assistance, but he did not answer.  Hours after the pre-arranged time for Clifton to call, he phoned his sister and offered no good excuse for his failure to follow through on her arrangements for police assistance.  She expressed annoyance with Clifton's behavior.

8

Regarding the Clifton trap house, the government also presented the testimony of the police officers who participated in the January 12 search. When the police entered, they found Mr. Brown looking "shocked and surprised." Tr. 2/11/15 pm at 37-38; JA ___. The police recovered a Lorcin semi-automatic .380 pistol, a Smith & Wesson revolver, and an Uzi MasterPiece Arms 9 millimeter (Tr. 2/12/15 pm at 85-91; JA ___; *see also* Tr. 2/11/15 pm at 48 and 54; JA ___) and 44.4 grams of PCP in partially filled bottles. An apartment key was found in a black jacket lying on the living room floor. Tr. 2/11/15 pm at 73-74; JA ___; Tr. 2/12/15 pm at 54-55; JA ___. The owner of the jacket was never identified. Tr. 2/12/15 pm at 64-65; JA ___. Mr. Brown had a little over a thousand dollars in cash, but no contraband, on his person. *Id*. at 58; JA ___.

### The Martin Trap House

Over two months after Mr. Brown's arrest and while he was being held, the police, on March 23, 2013, searched the apartment of Cheryl Martin. They recovered an empty bottle of PCP from that location and also arrested co-defendant Matthews at the scene. Tr. 3/16/15 at 42, 63 and 73; JA ___.

### The Williams Trap House

Also on March 23, 2013, the police searched apartment 21 which was leased to Tiffany Williams. Tr. 2/12/15 pm at 61; JA ___. They recovered 29.4 grams of PCP, 11 zip lock bags of crack cocaine, a digital scale, several guns and other drug

9

paraphernalia.  Two alleged co-conspirators, Breal Hicks and Ira Adona, were arrested at the scene.

Williams testified at trial and admitted that she too was charged with various drug offenses and that she pled guilty and cooperated with the government in the hopes of government favors.  Tr. 3/2/15 am at 23-27; JA ___.  She explained that she was dating Hicks and that the defendants would come by her apartment because of their friendship with Hicks.  *Id*. at 12; JA ___.  She testified that, while the defendants associated themselves with a group they self-identified as "Little Mexico," the association was only social and they never acted as a gang.  *Id*. at 19-21; JA ___.[10]

According to Williams, Mr. Brown visited her apartment during a brief period between late December 2012 and his arrest in early January 2013.  *Id*. at 50-51; JA __.  She noted an incident where she believed Mr. Brown had left her apartment to sell a "dipper" (*i.e*., a cigarette that had been dipped in PCP) and she agreed that Mr. Brown was a "street level drug dealer."  *Id.* at 35-36; JA ___.

---

[10] In that regard, Williams disclosed that when the group learned that Clifton had caused the arrest of Mr. Brown and Matthews suggested that they retaliate against Clifton, the group laughed and no one discussed further taking any action against Clifton or avenging Mr. Brown.  *Id*. at 63-64; JA ___ (Williams agreeing that the group member's approach was "every man for himself).

### *The Eddie Trap House*

On April 26, 2013 (again months after Mr. Brown's arrest), the police searched apartment 13, the residence of Conovia Eddie.  Tr. 3/3/15 pm at 6 and 11; JA ___.  When they entered, they found co-defendant Boston.  *Id*. at 7.  They also found one one-ounce vial containing PCP and one one-ounce empty vial that had an odor of PCP, a gun, and other contraband.  Tr. 3/3/15 pm at 14-15, 22-23, 31, 36, and 39-40; JA ____ and Tr. 3/4/15 am at 103-08; JA ___.  Boston had a key to the apartment on his person.  *Id*. at 30; JA ___.  No physical evidence directly connecting the apartment to Mr. Brown was recovered.

### *The Mathis Trap House*

The police, also well after Mr. Brown's arrest, searched apartment 14 where Monique Mathis resided.  Tr. 3/3/15 pm at 48-50; JA ___.  They found ammunition and drug paraphernalia.  *Id*. at 58; JA ___.

Mathis appeared at trial and testified that she knew Mr. Brown and Boston through their acquaintance, Kievar Baker, her boyfriend.  Tr. 3/4/15 pm at 28 and 34-38; JA ___ .  She maintained that Mr. Brown and Boston were selling PCP in the hallway of one of the complex buildings.  *Id*. at 40-1 and 43; JA ___.  At one point, Mathis testified that she saw an individual she identified as "A-Town" dividing PCP in an 8-ounce baby bottle among smaller bottles but she could not say how much liquid was in the baby bottle.  *Id*. at 62-64; JA ___.   While Mathis

believed Mr. Brown was present based on the sound of the voices she could hear, she did not actually see Mr. Brown and she did not know what he was doing there. Tr. 3/9/15 am at 71-72; JA ___.

Mathis testified that she held PCP and guns for dealers in the area. Tr. 3/4/15 pm at 67-8, 71-2, and 75; JA __. She considered the PCP kept at her apartment to be the property of A-Town. Tr. 3/4/15 pm at 82; JA ___. Mr. Brown, however, never asked her to hold any illegal contraband for him and she never did hold anything for him. *Id*. at 78; JA ___ and Tr. 3/9/15 at 71-2; JA ___.[11]

## **Closing and Jury Instructions**

Following presentation of the government's case, motions for judgment of acquittal, and the defense case, the jurors head closing argument. The government emphasized in closing that consent to entry could not be a defense to the burglary charge. Tr. 3/16/15 am at 82; JA ___. The government also requested a jury instruction along these lines.[12]

---

[11] Mr. Brown entered the Mathis apartment only once to use the bathroom. Tr. 3/9/15 am at 70; JA ___. Mathis also stated that Mr. Brown came to her door one day asking for "one" (which she understood mean PCP), and she declined his request. *Id.* at 74-76; JA ___. She did not believe that Mr. Brown had any drugs at the time. *Id*.

[12] In hindsight, this strategy was not sound because it underscored the cross-examination testimony which suggested that Clifton collaborated with the defendants.

12

Judge Leon instructed the jury first on the elements necessary to find Mr.

Brown guilty of conspiring with Matthews to distribute PCP.  Tr. 3/17/15 at 21-24;

JA __.  He then instructed the jury on the various counts related to Mr. Brown's

interaction with Clifton (*e.g.*, threats, armed robbery, kidnapping).  Specifically, on

the burglary count, the trial judge instructed:

> Mr. Brown is charged with second degree burglary while armed on or about January 7th, 2013.  Specifically, he's accused of burglarizing the apartment of Louis Clifton.

> The elements of the offense of burglary in the second degree, each of which the government must prove beyond a reasonable doubt, are as follows:

> Number one, the defendant entered the dwelling of another; number two, at the time of the entry, the defendant *intended to use Mr. Clifton's apartment as a place to possess and store narcotics and weapons*; and, three, at the time of the offense, the defendant was armed with a firearm.

*Id*. at 31; JA ___ (emphasis added).

On the PWID charge, Judge Leon instructed that the jury had to find that

Mr. Brown intentionally possessed a detectable amount of PCP, that PCP was a

controlled substance, and that Mr. Brown intended to distribute that PCP.  *Id*. at

32-33; JA ___.

On the possession of an unregistered firearm charge, the trial judge

instructed:

> Mr. Brown is charged with possessing . . . an unregistered firearm,
> after having been previously convicted of a misdemeanor, possession
> of an unregistered firearm. Specifically, Mr. Brown is charged with
> possessing a MasterPiece Arms 9-millimeter semi-automatic pistol, a
> Lorcin .380 caliber semi-automatic pistol, and a Smith & Wesson .38
> Special caliber revolver.
>
> .            .            .
>
> The parties have stipulated that Mr. Brown has previously been
> convicted of a misdemeanor possession of an unregistered firearm.

*Id.* at 37; JA ___.[13]

The judge also gave the jury instructions on the other charges, the standard

instruction for the term "possession" as including actual physical possession and

constructive possession and the terms "knowingly" and "willingly." *Id*. at 41-43;

JA ___. Finally, the trial judge advised the jury: "Your verdict on each count must

be unanimous." *Id*. at 46; JA ___.

### The Verdict And Sentencing

Evidently, the impeachment of Clifton was effective because the jury found

Mr. Brown "not guilty" of all the counts that related to the allegation that Mr.

Brown forced Mr. Clifton to get and provide him with a key to Clifton's apartment

and they deadlocked on the charged that Mr. Brown had used a firearm during a

---

[13] Later, the jurors sent a note asking for a copy of the stipulations and the judge
assured them that they would get that document. *Id.* at 65; JA ___.

drug trafficking offense.  As to the armed burglary charge, however, the jury

rendered a guilty verdict.[14]

The jury also found Mr. Brown guilty of PWID and possession of an

unregistered firearm.  As mentioned above, the jurors reached "not guilty" verdicts

on all other charges.

At Mr. Brown's sentencing hearing, the government argued that the points

applicable to the sentence for PWID should be increased based on his possession

of 100 to 400 grams of PCP.  In support of its position that more than 100 grams of

PCP should be attributed to Mr. Brown, the government maintained that it had

proved by a preponderance of evidence that there was in fact a conspiracy to

distribute PCP and that Mr. Brown never withdrew from that conspiracy.  In other

words, the government implied that the PCP recovered after Mr. Brown's arrest

should be attributed to him.  The government also maintained that the judge could

infer that the partially filled bottles of PCP found at Clifton's apartment were at

sometime full and in Mr. Brown's possession.  Had the bottles been full, they

would have contained 400 grams, not the 44 recovered.  In support of its position

that the court could infer that Mr. Brown had possessed more PCP than the 44

grams recovered, the government relied on the testimony of Williams and Mathis

---

[14] This outcome signaled a jury conclusion that Mr. Brown did not force Clifton to
produce an apartment key, and that Mr. Brown had Clifton's consent to enter.

that Mr. Brown had been selling PCP for awhile prior to his arrest.  Tr. 7/20/15 at

57-59; JA ____.

Over defense counsel's vigorous objections, Judge Leon sided with the

government.[15]  He sentenced Mr. Brown to 96 months of incarceration on the

PWID charge based, in part, on his finding that Mr. Brown intended to distribute

between 100 and 400 grams of PCP.  Judge Leon further sentenced Mr. Brown a

60 month mandatory minimum sentence on the burglary conviction and 12 months

on the unregistered firearm offense.  Judge Leon made all sentences consecutive

for a total of 168 months.  Tr. 9/1/15 at 67-8; JA ___.

## SUMMARY OF ARGUMENT

Appellant contends that each of the jury instructions applicable to the three

offenses for which he was convicted contained errors which require reversal.  First,

as to the burglary offense, the instruction failed to inform the jury of findings

necessary to establishing the predicate offense (*i.e.*, the offense that Appellant

purportedly intended to commit when he entered Clifton's apartment).  Second, as

to the unregistered firearm offense, the jury was improperly informed that

Appellant had a prior conviction for unregistered firearm.  Prior unregistered

firearm convictions are not an element of the offense for the jury's consideration

---

[15] At the pre-sentencing hearing, Judge Leon indicated that he would rely on the
level of PCP that would have existed had the vials in Clifton's apartment been full
and he stated that there was "lots of evidence" that Mr. Brown was using various
premises to store drugs.  Tr. 7/20/15 at 89-92; JA ___.

but are only a sentencing enhancement for the judge to consider. Third, because the instruction for PWID failed to inform properly the jurors that they had to agree on the specific PCP that Appellant possessed, the jurors should have been given a special unanimity instruction. Because the jurors may have disagreed as to the PCP that Appellant possessed for distribution purposes, Appellant was denied his constitutional right to a jury trial.

In addition to challenging his convictions, Appellant also maintains that his sentence for PWID was excessive. In that regard, Appellant argues that the trial judge erred in basing the calculation of that sentence on the conclusion that Appellant possessed between 100 and 400 grams of PCP.

## ARGUMENT

**I.    The Trial Judge Erred In Instructing The Jury That Mr. Brown Could Be Found Guilty Of Second Degree Burglary Based His Entering Clifton's Apartment With An Intent That Was Not Criminal.**

### A.    *Standard of Review*

Jury instructions must fairly present the applicable legal principles and standards. *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C. Cir. 1993) (citing *EEOC v. Atlantic Community Sch. Dist.*, 879 F.2d 434, 436 (8th Cir. 1989)). "An alleged failure to submit a proper jury instruction is a question of law subject to *de novo* review . . ." *Id.* (citing *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987), *aff'd*, 496 U.S. 543 (1990)). The Due Process implications of an

17

instructional error may necessitate review under the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705 (1967). *Rorie v. United States*, 882 A.2d 763, 776-77 (D.C. 2005).[16]

   B.    *The Conviction Of Burglary While Armed Cannot Stand*

Proof of burglary required that the government establish beyond a reasonable doubt that Appellant entered the dwelling of another and that, at that time, he intended to commit an offense. CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Jury Instruction 5.101. The law requires that the government must charge that the defendant had the specific intent to commit a particular offense when he entered the property. *United States v. Thomas*, 444 F.2d 919, 921-22 (D.C. Cir. 1971); *United States v. Seegers*, 445 F.2d 232, 233 (D.C. Cir. 1977).

As to the predicate offense element, the trial judge instructed that the jury had to find beyond a reasonable doubt that Appellant entered with the intent "to use Mr. Clifton's apartment as a place to possess and store narcotics and weapons." This instruction is fatally defective with respect to Appellant's burglary conviction for a number of reasons.

---

[16] In any event, the improper instruction here arguably satisfies the more rigorous standard of *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557 (1946).

First, possessing or storing narcotics and weapons without more is not a criminal offense.  Possessing narcotics is not *per se* illegal.[17]  Possessing weapons is not *per se* illegal.  The standard jury instruction for illegal possession requires that the jury find that the defendant possessed "a controlled substance" or detectable or measurable amount of PCP.  Criminal Jury Instruction 6.200.  In contrast to his instruction on the PCP possession charge (*id*. at 33; JA ___), the judge did not tell they jury that they had to find that Appellant entered with the intent to possess a Schedule II narcotic drug.  Therefore, the instruction on its face failed to inform the jury that they had to find that Appellant entered the Clifton apartment with the intent to commit a criminal offense.

Second, even assuming that the judge had properly instructed the jury that they had to find that the defendant entered with the intent to possess contraband, he neglected to instruct the jury that they had to find that the defendant entered with the intent to possess such contraband "voluntarily and on purpose and not by

---

[17] While the jury was instructed (and must have found) on the PWID charge that they had to determine whether the substance Appellant possessed qualified as PCP, a schedule II narcotic (*id*. at 33; JA __) and witnesses inferred that PCP is a narcotic, Meriam Webster's dictionary defines "narcotic" as "*a*:  a drug (as opium or morphine) that in moderate doses dulls the senses, relieves pain, and induces profound sleep but in excessive doses causes stupor, coma, or convulsions *b*:  a drug (as marijuana or LSD) subject to restriction similar to that of addictive narcotics whether physiologically."  Narcotics can be legally possessed with a prescription.

mistake or accident." Criminal Jury Instruction 6.200. Thus, the jurors were not required to find the necessary *mens rea* for the predicate offense.

Finally, it is not even clear whether the predicate offense that the jury had to find was a violation of District or Federal law; which makes a difference because, assuming that the jury had been properly instructed to find that Appellant entered with the intent to possess an illegal substance, the quantity the substance necessary to sustain a conviction standard varies. *Compare Thomas v. United States*, 650 A.2d 183 (D.C. 1994) with *United States v. Webb*, 255 F.3d 890 (D.C. Cir. 2001).

Accordingly, the jurors were not instructed that they had to find beyond a reasonable doubt that Appellant entered Clifton's apartment with the intent to commit a "particular offense." For that reason, the jury instruction was fatally defective and the second degree burglary conviction must be reversed.

## II.    The Trial Judge Erred By Instructing The Jury That Appellant Had A Prior Misdemeanor Unregistered Firearm Conviction

### A.    *Standard of Review*

It is plain error for the trial court to admit evidence of a prior conviction that was only relevant for sentencing purposes where the defendant had offered to stipulate to that fact. *Eady v. United States*, 44 A.3d 257, 265-66 (D.C. 2012).

### B.    *The Unregistered Firearm Conviction Cannot Stand*

Appellant was convicted of violating D.C. Code § 7-2502.01. That statute provides, subject to certain exceptions, that no person shall possess a firearm

20

unless that person holds a valid registration certificate for the firearm. While there is no penalty provision in section 7-2502.01, another provision, D.C. Code § 7-2507.06, sets forth the penalties for violation of unit "A" of Chapter 25 (Firearms Control), Title 7 and the unregistered firearm statute is a part of unit "A." Specifically, § 7-2507.06(a)(2)(A) imposes a mandatory minimum five year sentence for any person who is convicted a second time for possessing an unregistered firearm.

The standard jury instructions for a violation of § 7-2502.01 provides that the jurors be told that the government must prove that the defendant possessed a firearm; that he did so voluntarily and on purpose; and that the firearm had not been registered in the name of the defendant. Jury Instruction 6.504. Nothing in the instruction requires that the jurors make any finding with respect to a prior conviction.

The five–year mandatory minimum sentence for a defendant with a prior unregistered firearm conviction is a sentencing enhancement and not an element that must be proven to a jury. This is the rule of *United States v. Almendarez-Torres*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), a rule that was upheld by the U.S. Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

21

maximum must be submitted to a jury . . ." *Id*. at 490. The Supreme court's most recent holding on this issue in *Alleyne v. United States* did not change this rule. *Alleyne v. United States*, 133 S. Ct. 2151, 2160 n. 1 (2013).

Evidence of a prior conviction "is always . . . prejudicial to a defendant. It diverts the attention of the jury from the question of the defendant's responsibility for the crime charged to the improper issue of his bad character." *United States v. Jones*, 67 F.3d 320, 322 (D.C. Cir. 1995) (analyzing the prejudice that results from informing the jury of the nature of defendant's prior felony conviction in a prosecution for being a felon in possession of a firearm). Because the fact that the defendant's prior conviction was not an element that needed to be proven to the jury, but rather is a sentencing enhancement, had the government sought to prove that prior conviction at trial, it would have been prejudicial given the defense offer to stipulate. This is consistent with *United States v. Old Chief*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997), which held that where a defendant offers to stipulate to the element of a prior conviction, the prosecutor cannot introduce the name or nature of the defendant's prior conviction as it would be too prejudicial.

Here, Appellant was charged with possession of an unregistered firearm based on the specific weapons that were found in the Clifton apartment. He did not, however, have actual possession of any of those weapons when the police searched. But for Clifton's testimony, the government would have had to meet the

22

more demanding proof of constructive possession.  In that regard, the jury clearly

discredited Clifton's testimony which included Clifton's self-serving claim that the

guns in his apartment belonged Appellant.  Further, the defense brought out

evidence suggesting that, prior to Appellant's alleged take-over of Clifton's

apartment, a gun had been fired from within the apartment and suggested that

Clifton in fact knew how to use a gun – all of which pointed to Clifton possessing

the guns.  Moreover, the jury deadlocked on the charge of carrying a firearm

during a drug trafficking offense, an outcome which suggested that some juror(s)

questioned Appellant's connection to the firearms in Clifton's apartment.  Thus,

the admission of the fact that Appellant had a prior unregistered firearms

conviction was highly prejudicial because it suggested that Appellant was simply

predisposed to carry unregistered firearms, as well as suggesting a criminal

disposition in general.

The trial judge was put on notice that the submission of the prior conviction

to the jury was, at least potentially, improper.  Tr. 3/9/15 am at 114-15; JA ___.

Under these circumstances, the judge erred in allowing the jury to learn of

Appellant's prior unregistered firearm conviction.  That error was compounded

when he sent the jurors the stipulations that repeated the fact of the prior

conviction.  Accordingly, Appellant's conviction for unregistered firearm must be

reversed.

**III.    The Trial Judge Erred By Failing To Give A Special Unanimity Instruction On The PWID Charge.**

    *A.    Standard of Review*

While this Court has "strongly approved" the rule "requiring an instruction on the need for unanimity on the particular acts on which a guilty verdict is based," it reviews for plain error the failure to give a special unanimity instruction where the jury could disagree as to which of several acts supports a guilty finding. *United States v. Hubbard*, 889 F.2d 277, 279 (D.C. Cir. 1989) (citing *United States v. Mangieri*, 694 F.2d 1270, 1281 (D.C. Cir. 1982)).

    *B.    The PWID Conviction Cannot Stand.*

The Sixth Amendment requires a unanimous jury verdict in criminal trials. U.S. CONST. amend. VI.  This Court has endorsed the District of Columbia Court of Appeals rule requiring a unanimity instruction by explaining that, where on charge encompasses two separate incidents:  "[A] judge should (and under the District of Columbia's rule must) 'instruct the jury that if a guilty verdict is returned the jurors must be unanimous as to which indictment or incident they find the defendant guilty.' " *Mangieri*, 694 F.2d at 1281 (quoting *United States v. Hack*, 445 A.2d 634, 641 (D.C. App. 1982) (other citations omitted)). This Court has advised that the trial judge should give a special unanimity instruction without request where the jurors could disagree as to the specifics of the offense.

In the instant case, the trial judge did not advise the jurors that they had to agree to any specific alleged quantity of PCP or incident of possession of PCP.[18] That omission was problematic here given the multiple allegations of different incidents of PCP possession by Appellant and the likelihood that jurors could have disagreed as to which of those incidents supported the charge.

For example, while Clifton testified that Appellant possessed the PCP found in his apartment and had previously sold PCP to him, the jury did not credit Clifton's testimony and deadlocked on the charge of possessing a firearm during a drug trafficking offense.  These results suggest that some juror believed that the PCP at Clifton's apartment did not belong to Appellant and/or that Appellant did not intend to distribute (or traffic) that PCP.

If some juror concluded that Appellant could not be found guilty of PWID based on the PCP found in Clifton's apartment, that juror could still have found Appellant guilty of PWID based on other evidence of his PCP distribution activities.  Such juror could have relied on Williams' testimony that she believed that Appellant left her apartment on one occasion to conduct a PCP sale and that Appellant was a small time street dealer.  Or, such juror could have relied on Mathis' testimony that Appellant was conducting PCP sales in a Woodberry

---

[18] This omission was in contrast to the armed burglary instruction which specified that the incident occurred on or about January 7th and the unregistered firearm conviction which specified the guns that were unregistered.

hallway.  Meanwhile, any juror relying on the Clifton evidence of PCP distribution could have rejected the Williams and Mathis allegations of PCP distribution.  The result would be a jury that was not unanimous on the PWID count.

Given this Court's admonition in favor of special unanimity instructions and the multiple allegations of PCP distribution, it was error to omit such an instruction here and that error was plain.  As that omission implicated the right to a jury trial, the error was of constitutional magnitude and affected a substantial right.  *Hawkins v. United States*, 434 A.2d 446 (D.C. 1981).  Further, Appellant, unaided by a special unanimity instruction, was prejudiced by the confusion inherent in the separate credibility defenses that applied to the different incidents.  Here, where different credibility defenses applied to each incident, there can be no doubt that the failure to give a special unanimity instruction enabled the jurors to disagree on the essential element supporting their verdict.  Had the jury been properly instructed, the jurors would not, we believe, have been able to agree on the facts essential to their verdict and they would not have convicted Appellant of PWID.  Accordingly, the jeopardy to the fairness and integrity of the proceedings from the error at issue is manifest, and Appellant's PWID conviction should be reversed.

26

## IV. The Sentence Based On Possession Of 100 Grams Or More Of PCP Was Unreasonable And Clearly Erroneous

### A. Standard of Review

Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the federal Sentencing Guidelines have been advisory, and appellate review of district court sentences has been for "reasonableness." There are two types of appellate sentencing review: procedural and substantive. *United States v. Gardellini*, 545 F.3d 1089, 1092 (D.C. Cir. 2008), citing *Gall v. United States*, 552 U.S. 38 (2007). As to procedure, appellate courts must ensure that the sentencing court did not: (1) improperly calculate or fail to calculate the applicable Guidelines range, (2) treat the Guidelines as mandatory, (3) fail to consider the 18 U.S.C. § 3553(a) factors, (4) select a sentence based on "clearly erroneous facts," and (5) fail to "adequately explain the chosen sentence," including any deviation from the Guidelines range. *Id*.

The appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. *Id*. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. *Id*.

An appellate court reviews a district court's factual findings for clear error and it reviews *de novo* the district court's application and interpretation of the sentencing guidelines. *United States v. Day*, 524 F.3d 1361 (D.C. Cir. 2008).

When a court in applying its discretion fails to consider the factors as required by law, it abuses its discretion. *United States v. Larry*, 632 F.3d 933 (5th Cir. 2011).

> B.  *Appellant's PWID Sentence Must Be Reduced Based On Procedural And Substantive Error*

Here, the trial judge made a factual finding that 100 to 400 grams of PCP could be attributed to Mr. Brown.  For a host of reasons, that finding should not be sustained.

First, the government's claim that it proved by a preponderance of the evidence a conspiracy is without merit.  While there was ample evidence that the members of Little Mexico knew each other, partied together, hung out together, shared video games, texted each other, and even dated the same women, the evidence that they actually had an agreement to distribute PCP in some sort of collaborative way was based on the flimsiest of proof.  Williams, the government's own witness testified that the group was merely a social gathering and that they did not collaborate to distribute PCP.  Mathis, Williams and Clifton testified to observing Appellant alone engaging in individual transactions unaccompanied by the other group members and Williams characterized him as a small street level dealer.  Mathis' testimony of refusing to turn supplies she had over to Appellant suggests that the PCP supplies were not held jointly by the group.  While Mathis described one incident in which she saw A-Town dividing up PCP volumes when

she believed other group members were present, she could not confirm who was present or what A-Town was going to do with the divided quantities.

The only other incident that was arguably undertaken as a group that was in furtherance of PCP distribution activity was the alleged assault on Clifton, from which Clifton (a much older slight man) was mysteriously able to escape without injury. That purported incident was uncorroborated and inconsistent with Williams' testimony that the group members laughed at a comment that they should punish Clifton for setting up Appellant. The jury clearly discredited the allegation of a group attack on Clifton and, on its face, the allegation was improbable. Indeed, given the lack of evidence of an agreement to engage in illegal activity, the notion that the interaction between the Little Mexico members should be criminalized begins to collide with the constitutional right to freedom of association.

And, the attribution, via a conspiracy theory, of PCP amounts found at locations other than Clifton's apartment is troubling here, where, Appellant had been held for sometime before, and was still being held when, those other quantities were found. The government cited no authority for its implicit theory that the drugs possessed by some co-conspirators are deemed possessed by all co-conspirators. Moreover, the various quantities recovered from the trap houses still did not add up to 100 grams.

29

Finally, the evidence is insufficient to infer that Appellant had, at sometime prior to his arrest, more than 100 grams of PCP.  Notwithstanding that the PCP bottles recovered from the Clifton apartment were partially full and Appellant had been distributing PCP prior to that recovery, the amount recovered was only 44.4 grams, significantly less than 100 grams.  Further, the evidence that Appellant had been dealing previously did not indicate any substantial level of dealing.  As noted above, Williams characterized Appellant as a small time street dealer.  She recalled one incident when, she assumed, Appellant went to engage in a drug transaction.  Although Mathis reported that Appellant had been dealing in a hallway of the complex, she did not quantify that activity.  Clifton, whose credibility is doubtful given the jury verdict, stated that he purchased PCP from Appellant only several times.

In sum, it is simply too speculative (not to mention directly contrary to the jury's verdict) to attribute, under a conspiracy theory, the quantities of PCP recovered at all the trap houses to Appellant.  It is similarly overly speculative to assume that the bottles of PCP recovered at the Clifton apartment contained at some point more than double the quantity of PCP found in them and to assume that they were in Appellant's possession when they contained at least 100 grams of PCP.  For these reasons, the trial judge based Appellant's PWID sentence on clearly erroneous facts and that sentence was unreasonable.

## CONCLUSION

WHEREFORE, Appellant respectfully requests that this Court reverse or vacate his convictions for second degree burglary while armed (*see* D.C. Code §§ 801(b) and 4502), PWID based on PCP (*see* 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)), and possession of an unregistered firearm (second offense) (*see* D.C. Code §§ 7-2502.01(a) and 2507.02(2)(A)) and/or that this Court order that his sentence for PWID be reduced.

Respectfully submitted,

/s/ Christine Pembroke
Christine Pembroke
3312 Dent Place, NW
Washington, DC 20007
Telephone:  202-553-3118
Bar No. 417913

31

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*7,318*] words.

[   ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief document complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2016*] in [*14pt Times New Roman*]; *or*

[   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: March 27, 2017        /s/ Christine Pembroke
                                  *Counsel for Appellant*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 27th day of March, 2017, I caused this Page

Proof Brief of Appellant to be filed electronically with the Clerk of the Court using

the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

> Elizabeth Harper Danello
> Elizabeth Trosman
> Office of the U.S. Attorney
> 555 4th Street, NW, Room 8104
> Washington, DC 20530
> (202) 252-6829
> elizabeth.danello@usdoj.gov
> elizabeth.trosman@usdoj.gov
>
> *Counsel for Appellee*

/s/ Christine Pembroke
*Counsel for Appellant*

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

**Page**

D.C. Code § 22-801 ..............................................................................1

D.C. Code § 7-2502.01 ........................................................................2

D.C. Code § 7-2507.06 ........................................................................4

21 U.S.C. §§ 841(a)(1) through 841(b)(1)(C) ....................................6

Division IV.  Criminal law and procedure and prisoners.
Title 22.  Criminal Offenses and Penalties.
Subtitle I.  Criminal Offenses.
Chapter 8.  Burglary.

D.C. Code § 22-801  (2016)

## § 22-801.  Definition and penalty.

**(a)** Whoever shall, either in the nighttime or in the daytime, break and enter, or enter without breaking, any dwelling, or room used as a sleeping apartment in any building, with intent to break and carry away any part thereof, or any fixture or other thing attached to or connected thereto or to commit any criminal offense, shall, if any person is in any part of such dwelling or sleeping apartment at the time of such breaking and entering, or entering without breaking, be guilty of burglary in the first degree. Burglary in the first degree shall be punished by imprisonment for not less than 5 years nor more than 30 years.

**(b)** Except as provided in subsection (a) of this section, whoever shall, either in the night or in the daytime, break and enter, or enter without breaking, any dwelling, bank, store, warehouse, shop, stable, or other building or any apartment or room, whether at the time occupied or not, or any steamboat, canalboat, vessel, or other watercraft, or railroad car, or any yard where any lumber, coal, or other goods or chattels are deposited and kept for the purpose of trade, with intent to break and carry away any part thereof or any fixture or other thing attached to or connected with the same, or to commit any criminal offense, shall be guilty of burglary in the second degree. Burglary in the second degree shall be punished by imprisonment for not less than 2 years nor more than 15 years.

**(c)** In addition to any other penalty provided under this section, a person may be fined an amount not more than the amount set forth in § 22-3571.01.

Division I.  Government of District.
Title 7.  Human Health Care and Safety.
Subtitle J.  Public Safety.
Chapter 25.  Firearms Control.
Unit A.  Firearms Control Regulations.
Subchapter II.  Firearms and Destructive Devices.

D.C. Code § 7-2502.01  (2016)

## § 7-2502.01.  Registration requirements.

**(a)** Except as otherwise provided in this unit, no person or organization in the District of Columbia ("District") shall receive, possess, control, transfer, offer for sale, sell, give, or deliver any destructive device, and no person or organization in the District shall possess or control any firearm, unless the person or organization holds a valid registration certificate for the firearm. A registration certificate may be issued:

   **(1)** To an organization if:

      **(A)** The organization employs at least 1 commissioned special police officer or employee licensed to carry a firearm whom the organization arms during the employee's duty hours; and

      **(B)** The registration is issued in the name of the organization and in the name of the president or chief executive officer of the organization;

   **(2)** In the discretion of the Chief of Police, to a police officer who has retired from the Metropolitan Police Department;

   **(3)** In the discretion of the Chief of Police, to the Fire Marshal and any member of the Fire and Arson Investigation Unit of the Fire Prevention Bureau of the Fire Department of the District of Columbia, who is designated in writing by the Fire Chief, for the purpose of enforcing the arson and fire safety laws of the District of Columbia;

   **(4)** To a firearms instructor, or to an organization that employs a firearms instructor, for the purpose of conducting firearms training; or

   **(5)** To a person who complies with, and meets the requirements of, this unit.
**(b)** Subsection (a) of this section shall not apply to:

Add. 2

**(1)** Any law enforcement officer or agent of the District or the United States, or any law enforcement officer or agent of the government of any state or subdivision thereof, or any member of the armed forces of the United States, the National Guard or organized reserves, when such officer, agent, or member is authorized to possess such a firearm or device while on duty in the performance of official authorized functions;

**(2)** Any person holding a dealer's license; provided, that the firearm or destructive device is:

    **(A)** Acquired by such person in the normal conduct of business;

    **(B)** Kept at the place described in the dealer's license; and

    **(C)** Not kept for such person's private use or protection, or for the protection of his business;

**(3)** With respect to firearms, any nonresident of the District participating in any lawful recreational firearm-related activity in the District, or on his way to or from such activity in another jurisdiction; provided, that such person, whenever in possession of a firearm, shall upon demand of any member of the Metropolitan Police Department, or other bona fide law enforcement officer, exhibit proof that he is on his way to or from such activity, and that his possession or control of such firearm is lawful in the jurisdiction in which he resides; provided further, that such weapon shall be transported in accordance with § 22-4504.02;

**(4)** Any person who temporarily possesses a firearm registered to another person while in the home or place of business of the registrant; provided, that the person is not otherwise prohibited from possessing firearms and the person reasonably believes that possession of the firearm is necessary to prevent imminent death or great bodily harm to himself or herself; or

**(5)** Any person who temporarily possesses a firearm while participating in a firearms training and safety class conducted by a firearms instructor.

**(c)** For the purposes of subsection (b)(3) of this section, the term "recreational firearm-related activity" includes a firearms training and safety class.

Add. 3

Division I.  Government of District.
Title 7.  Human Health Care and Safety.
Subtitle J.  Public Safety.
Chapter 25.  Firearms Control.
Unit A.  Firearms Control Regulations.
Subchapter VII.  Miscellaneous Provisions.

D.C. Code § 7-2507.06  (2016)

## § 7-2507.06.  Penalties.

**(a)** Except as provided in §§ 7-2502.05, 7-2502.08, 7-2507.02, 7-2508.07, and subchapter IX of this chapter [§ 7-2509.01 et seq.], any person convicted of a violation of any provision of this unit shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned for not more than 1 year, or both; except that:

   **(1)** A person who knowingly or intentionally sells, transfers, or distributes a firearm, destructive device, or ammunition to a person under 18 years of age shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned for not more than 10 years, or both.

   **(2)  (A)** Except as provided in subparagraph (B) of this paragraph, any person who is convicted a second time for possessing an unregistered firearm shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned not more than 5 years, or both.

      **(B)** A person who in the person's dwelling place, place of business, or on other land possessed by the person, possesses a pistol, or firearm that could otherwise be registered, shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned not more than 1 year, or both.

   **(3)  (A)** A person convicted of possessing more than one restricted pistol bullet in violation of § 7-2506.01(a)(3) may be sentenced to imprisonment for a term not to exceed 10 years and shall be sentenced to imprisonment for a mandatory-minimum term of not less than 1 year and shall not be released from prison or granted probation or suspension of sentence prior to serving the mandatory-minimum sentence, and, in addition, may be fined not more than the amount set forth in § 22-3571.01.

      **(B)** A person convicted of possessing a single restricted pistol bullet in violation of § 7-2506.01(a)(3) shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned for not more than 1 year, or both.

Add. 4

**(b)** **(1)** For the following violations of this unit, the prosecution may, in the operation of its discretion, offer an administrative disposition whereby a person may immediately resolve his or her case upon payment of a fine, in an amount set by the Board of Judges of the Superior Court of the District of Columbia; provided, that the person is not concurrently charged with another criminal offense arising from the same event, other than an offense pursuant to § 7-2502.01 or § 7-2506.01:

    **(A)** Possession of an unregistered firearm pursuant to § 7-2502.01;

    **(B)** Unlawful possession of ammunition (but not possession of more than one restricted pistol bullet) pursuant to § 7-2506.01; and

    **(C)** Possession of a single restricted pistol bullet pursuant to § 7-2507.06(a)(3)(B); provided, that the person did not also possess a firearm at the time of arrest.

    **(2)** In determining whether to offer an administrative disposition pursuant to this subsection, the prosecution, in the operation of its discretion, may consider, among other factors, whether at the time of his or her arrest, the person was a resident of the District of Columbia and whether the person had knowledge of § 7-2502.01, § 7-2506.01, or § 7-2507.06(a)(3)(B).

    **(3)** An administrative disposition pursuant to this subsection is not a conviction of a crime and shall not be equated to a criminal conviction. The fact that a person resolved a charge through an administrative disposition pursuant to this subsection may not be relied upon by any court of the District of Columbia or any agency of the District of Columbia in any subsequent criminal, civil, or administrative proceeding or administrative action to impose any sanction, penalty, enhanced sentence, or civil disability.

    **(4)** At the time of the prosecution's offer of an administrative disposition, the person may elect to proceed with the criminal case in lieu of an administrative disposition.

    **(5)** The Mayor, pursuant to subchapter I of Chapter 5 of Title 2 [§ 2-501 et seq.], may issue rules to implement the provisions of this subsection. The rules may provide procedures and criteria to be used in determining when the prosecution, in the operation of its discretion, may offer the option of an administrative disposition pursuant to this subsection.

## 21 U.S.C. §§ 841(a)(1) through 841(b)(1)(C)

**(a)** UNLAWFUL ACTS Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

**(1)** to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

**(2)** to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

**(b)** PENALTIES Except as otherwise provided in section 849, 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

**(1)(A)** In the case of a violation of subsection (a) of this section involving—

**(i)** 1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

**(ii)** 5 kilograms or more of a mixture or substance containing a detectable amount of—

    **(I)** coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;
    **(II)** cocaine, its salts, optical and geometric isomers, and salts of isomers;
    **(III)** ecgonine, its derivatives, their salts, isomers, and salts of isomers; or
    **(IV)** any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

**(iii)** 280 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

**(iv)** 100 grams or more of phencyclidine (PCP) or 1 kilogram or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

**(v)** 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

**(vi)** 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide or 100 grams or

more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

**(vii)** 1000 kilograms or more of a mixture or substance containing a detectable amount of marihuana, or 1,000 or more marihuana plants regardless of weight; or

**(viii)** 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $10,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of title 18 or $20,000,000 if the defendant is an individual or $75,000,000 if the defendant is other than an individual, or both. If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence. Notwithstanding section 3583 of title 18, any sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

**(B)** In the case of a violation of subsection (a) of this section involving—

**(i)** 100 grams or more of a mixture or substance containing a detectable amount of heroin;

**(ii)** 500 grams or more of a mixture or substance containing a detectable amount of—

    **(I)** coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

    **(II)**   cocaine, its salts, optical and geometric isomers, and salts of isomers;

    **(III)**  ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

    **(IV)**  any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

**(iii)** 28 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

**(iv)** 10 grams or more of phencyclidine (PCP) or 100 grams or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

**(v)** 1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

**(vi)** 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

**(vii)** 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana, or 100 or more marihuana plants regardless of weight; or

**(viii)** 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $5,000,000 if the defendant is an individual or $25,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a

fine not to exceed the greater of twice that authorized in accordance with the provisions of title 18 or $8,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of title 18, any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of supervised release of at least 4 years in addition to such term of imprisonment and shall, if there was such a prior conviction, include a term of supervised release of at least 8 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

**(C)** In the case of a controlled substance in schedule I or II, gamma hydroxybutyric acid (including when scheduled as an approved drug product for purposes of section 3(a)(1)(B) of the Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000), or 1 gram of flunitrazepam, except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of title 18 or $2,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 6 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph which provide for a mandatory term of imprisonment if death or serious bodily injury results, nor shall a person so sentenced be eligible for parole during the term of such a sentence.

**(D)** In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight, 10 kilograms of hashish, or one kilogram of hashish oil, such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of title 18 or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

**(E) (i)** Except as provided in subparagraphs (C) and (D), in the case of any controlled substance in schedule III, such person shall be sentenced to a term of imprisonment of not more than 10 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 15 years, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $500,000 if the defendant is an individual or $2,500,000 if the defendant is other than an individual, or both.

**(ii)** If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 30 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both.

**(iii)** Any sentence imposing a term of imprisonment under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

**(2)** In the case of a controlled substance in schedule IV, such person shall be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of title 18 or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least one year in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment.

**(3)** In the case of a controlled substance in schedule V, such person shall be sentenced to a term of imprisonment of not more than one year, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $100,000 if the defendant is an individual or $250,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 4 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of title 18 or $200,000 if the defendant is an individual or $500,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph may, if there was a prior conviction, impose a term of supervised release of not more than 1 year, in addition to such term of imprisonment.

**(4)** Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of title 18.

**(5)** Any person who violates subsection (a) of this section by cultivating or manufacturing a controlled substance on Federal property shall be imprisoned as provided in this subsection and shall be fined any amount not to exceed—

**(A)** the amount authorized in accordance with this section;

**(B)** the amount authorized in accordance with the provisions of title 18;

Add. 11

**(C)** $500,000 if the defendant is an individual; or

**(D)** $1,000,000 if the defendant is other than an individual;

or both.

**(6)** Any person who violates subsection (a), or attempts to do so, and knowingly or intentionally uses a poison, chemical, or other hazardous substance on Federal land, and, by such use—

**(A)** creates a serious hazard to humans, wildlife, or domestic animals,

**(B)** degrades or harms the environment or natural resources, or

**(C)** pollutes an aquifer, spring, stream, river, or body of water,

shall be fined in accordance with title 18 or imprisoned not more than five years, or both.

**(7)** PENALTIES FOR DISTRIBUTION.—

**(A) In general.—**

Whoever, with intent to commit a crime of violence, as defined in section 16 of title 18 (including rape), against an individual, violates subsection (a) by distributing a controlled substance or controlled substance analogue to that individual without that individual's knowledge, shall be imprisoned not more than 20 years and fined in accordance with title 18.

**(B) Definition.—**

For purposes of this paragraph, the term "without that individual's knowledge" means that the individual is unaware that a substance with the ability to alter that individual's ability to appraise conduct or to decline participation in or communicate unwillingness to participate in conduct is administered to the individual.